# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1212-20

T.M.C.,

    Plaintiff-Respondent,

v.

M.K.B.,

    Defendant-Appellant.

_____

Submitted October 25, 2021 – Decided November 5, 2021

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-0624-21.

Law Offices of Nelson, Fromer, Crocco & Jordan, attorneys for appellant (Steven E. Nelson, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant M.K.B.[1] appeals the trial court's issuance of a domestic violence final restraining order ("FRO") against him in favor of plaintiff T.M.C. He contends the judge who presided over the trial had inadequate evidence and made insufficient findings to enter the FRO under the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -33. We affirm.

We summarize the evidence as follows. Plaintiff and defendant first met in April 2020 when plaintiff was living in a motel. They developed a dating relationship, and plaintiff eventually moved into defendant's house.

Plaintiff has a long history of substance abuse and mental health issues, including a diagnosis of bipolar disorder and PTSD. She has been hospitalized for attempting suicide. She has been prescribed medication and undergone counseling.

According to defendant's trial testimony, he allowed plaintiff to live with him only if she abided by certain so-called "ground rules," which included her staying on her prescribed medication and not using illegal drugs.

Defendant operates a seasonal bait and tackle shop. He eventually hired plaintiff to work for him at the shop.

---

[1] We use initials to protect the identities of the parties. R. 1:38-3(d)(9).

Although the parties' relationship and cohabitation started off amicably, it appears that the relationship deteriorated as time passed. According to defendant, plaintiff stopped taking her medication and also began abusing drugs. Further rifts developed when defendant discovered that a lock box he kept at home with cash from his business went missing. He blamed plaintiff for stealing it, but she denied doing so. Also, defendant discovered that his debit card was not in his wallet and that $2000 in withdrawals had been made with it from his bank account without his permission. Again, plaintiff denied it was her when confronted.

In October 2020, plaintiff moved out of defendant's residence and began staying at a local Holiday Inn. Defendant surmised she was using the stolen funds to pay her hotel charges.

On the day of the domestic violence incident, November 5, 2020, defendant went to the Holiday Inn after plaintiff initiated contact with him. Defendant picked up plaintiff and they went out to dinner. Plaintiff then invited defendant back to her hotel room. They cuddled in bed for awhile.

An argument erupted when defendant told plaintiff she could not come back to live with him unless she abided by the ground rules. She did not agree, and a shouting match ensued.

A-1212-20

As described by plaintiff, defendant struck her four times in the right hand and once in the chest. He then left the hotel. By contrast, in his own testimony, defendant denied striking plaintiff.

During her testimony, plaintiff presented four photos of her bruised right hand, which the judge admitted into evidence.[2] The photos clearly show redness and bruising on the hand.

The only witnesses who testified at trial were plaintiff and defendant. Defendant was represented by counsel, but plaintiff was not.

At the end of the one-day hearing on December 23, 2020, the judge granted the FRO, orally placing on the record detailed findings of fact and conclusions of law. The judge issued a corresponding order that day memorializing his decision and specifying the terms of the restraints.

The judge found plaintiff credible in her narrative about the incident at the Holiday Inn. By comparison, the judge was ambivalent about defendant, finding his version of the predicate act neither "credible or incredible."

The judge specifically adopted plaintiff's assertion that defendant had struck her multiple times. The judge found the physical blows were

---

[2] Defendant did not supply us with the photo exhibits with his brief and appendix, but we obtained them through the efforts of the clerk's office.

A-1212-20

corroborated by the photos showing what he described as "significant bruising" on plaintiff's right hand and knuckle. The physical harm was also corroborated by plaintiff's testimony that the injury caused her to go to a hospital emergency room that evening soon after the altercation. Further, the judge found it significant that defendant had hurriedly fled from the scene, an act arguably consistent with a consciousness of guilt.

The judge made no findings about whether plaintiff stole from defendant, observing those issues were more appropriate to resolve in a different criminal court proceeding.

Sifting through the proofs, the judge found plaintiff had proved, by a preponderance of the evidence, the requirements of the PDVA for an FRO. Specifically, the judge was satisfied the evidence met both prongs of Silver v. Silver, 387 N.J. Super. 112, 125-26 (App. Div. 2006) (delineating a two-part test for granting an FRO under the PDVA).

As to prong one of Silver, the judge found that defendant committed the predicate act of assault, as defined in the Criminal Code at N.J.S.A. 2C:12-1. As to prong two, the judge concluded that restraints were necessary to protect plaintiff. In this latter regard, the judge cited in his oral ruling this court's opinion in A.M.C. v. P.B., 447 N.J. Super. 402 (App. Div. 2016), in which we

observed that when the predicate act involves the use of physical force and violence, the decision to issue an FRO "is most often perfunctory and self-evident." Id. at 417 (quoting Silver, 387 N.J. Super. at 127).

In his brief on appeal, to which plaintiff has failed to respond, defendant argues the Family Part judge erred in several respects. Among other things, he contends the record does not establish by a preponderance of the evidence that he assaulted plaintiff. He argues that the judge's credibility findings "vacillat[ed]" and were "unclear." Defendant further asserts the judge's ability to assess the witnesses' credibility was limited by the Zoom format, and that at a point in her testimony when discussing the need for future restraints, plaintiff's video feed disconnected, and the judge could no longer see her. Defendant also argues the judge did not adequately consider what he submits was plaintiff's ulterior motive to fabricate a story about him to divert attention from her alleged thefts.

As to prong two, defendant argues that the judge misread the quotes from Silver and A.M.C. to signify that the necessity for restraints is "always" (as opposed to "most often") present when an assault has been proven. He maintains several of the statutory factors relating to prong two do not weigh in favor of necessity, particularly since there is no evidence of a previous history of

domestic altercations between them. He stresses the parties live in separate parts of the county and have no reason or expectation to remain in contact. Defendant also emphasizes that after they initially broke up, it was plaintiff, not defendant, who initiated efforts to reunite. Defendant suggests she attempted to reconcile only because she was running out of money out to pay her hotel bills.

The applicable legal standards are well established. To grant an FRO, a trial court must make certain findings pursuant to a two-prong analysis. See Silver, 387 N.J. Super. at 125-27. First, the trial court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19 has occurred." Id. at 125. Then, if the trial court finds a predicate act occurred, the court must determine if an FRO is necessary for the protection of the victim based on the factors listed in N.J.S.A. 2C:25-29(a)(1)-(a)(6).[3] Id. at 127.

---

[3] The six factors are:

> (1) [t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment, and physical abuse; (2) [t]he existence of immediate danger to person or property; (3) [t]he financial circumstances of the plaintiff and defendant; (4) [t]he best interests of the victim and any child; (5) [i]n determining custody and parenting time the protection of the victim's safety; and (6) [t]he existence

A-1212-20

In reviewing the FRO issued by the Family Part following a trial, our scope of review is limited. The Family Part's findings are binding on appeal "when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Such deference is particularly appropriate in cases where, as here, the evidence is largely testimonial in nature and hinges upon a court's opportunity to make credibility assessments of the testifying witnesses. Cesare, 154 N.J. at 412. A trial judge, rather than an appellate court, has a better opportunity to evaluate witness credibility. Ibid.

We also bear in mind the expertise of Family Part judges, many of whom routinely preside over many domestic violence cases. Cesare, 154 N.J. at 413. In such matters, we will not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." S.D. v. M.J.R., 415 N.J. Super. 417, 425 (App. Div. 2010) (quoting Cesare, 154 N.J. at 411-412).

of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a)(1)-(a)(6)].

Applying these standards, we affirm the trial court's issuance of the FRO, substantially for the sound reasons stated by the court in its oral opinion. We add only a few additional comments.

The judge's credibility findings—adopting plaintiff's narrative of the events in the hotel room over that of defendant's—are well supported by the record. As we have already noted, the red marks and swelling on plaintiff's hand documented in the four photographs visibly corroborate her account that defendant struck her. There is no evidence of provocation, and defendant did not assert self-defense at trial.

We are also unswayed by defendant's criticisms of the remote format of the FRO hearing on Zoom. Like many other court proceedings conducted in 2020 during the Covid-19 pandemic, some technological glitches occurred, but we regard none of them in the present case to have deprived defendant of a fair trial.

The evidence of an assault to satisfy prong one of <u>Silver</u> was more than ample. The judge identified several facts that reasonably supported the conclusion that defendant inflicted physical harm upon plaintiff with an apparent intent to hurt her. Defendant devoted much of his trial testimony and his appellate brief to discussing plaintiff's alleged thefts of funds from his metal

box and bank account. But those alleged thefts do not disprove plaintiff's sworn account that defendant hit her. In fact, the alleged thefts would be consistent with an inference that defendant was enraged with plaintiff, and therefore more likely to lose self-control and strike her.

The second prong establishing the necessity for restraints was also met. We do not believe the judge placed undue reliance upon our opinion in A.M.C. v. P.B., by focusing on the violent nature of the predicate act as a strong factor to justify the grant of restraints. Although a portion of the Zoom video was not viewable, plaintiff testified at the outset of the trial that she remains in fear of defendant, and the judge reasonably accepted her assertions.

All other points raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1212-20